DOMENGEAUX, Judge.
This appeal presents a set of relationships that involve a plaintiff/employee who was injured while using leased equipment which he alleges was defective. The plaintiff ultimately filed suit against the lessor and the manufacturer of the equipment. The employer intervened in the suit seeking reimbursement for the worker’s compensation benefits paid to its employee.
The case was tried before a jury which returned a verdict in favor of the defendants. The plaintiff and the intervenor (appellants) have appealed their adverse judgment alleging that the trial court erred in declining to give requested jury instructions which would have outlined the legal status and duties of the various parties pertaining to strict liability.
Plaintiff Huey Marler was employed as a maintenance supervisor by the Diocese of Alexandria-Shreveport and worked at the Holy Savior Menard Central High School in Alexandria, Louisiana. On February 4, 1982, Marler was instructed to replace several neon bulbs in the school gymnasium. This duty required the use of a telescoping ladder or elevated work platform.[1] Because he was unable to obtain a ladder from his regular supplier, Marler’s supervisor rented a similar piece of equipment from defendant Rent-It Company. Marler alleges that while he was replacing the bulbs the ladder collapsed causing his injuries.
The plaintiff complained at trial that the ladder provided to Holy Savior Menard Central High School by defendant Rent-It Company and manufactured by defendant M.S. Churchman Company was defective. Marler testified that only one cotter key accompanied the ladder, and that the key supplied was not of the requisite size or quality to properly lock the work platform in place at the top of the ladder. Further, the plaintiff showed that neither oral nor written assembly instructions were given *786 to Marler, and the printed matter on the side of the ladder was illegible due to time and wear.
The defendants demonstrated, however, that Marler was sufficiently experienced with this type of ladder, that oral assembly instructions were offered and rejected, that Marler failed to request additional or better cotter keys, and that Marler attempted to reinforce the assembly by substituting a nail for the allegedly missing cotter key. Further, defendants produced an expert in mechanical engineering who testified that Mr. Marler’s version of the accident could not have occurred the way he described.
After the parties’ closing arguments, the trial judge charged the jury; however, he refused to include tendered instructions concerning strict liability. Instead, the trial judge instructed the jury as to the basis of Louisiana’s negligence standard, discussing with them La.C.C. Art. 2315, the definition of a reasonably prudent person, and the application of comparative negligence under La.C.C. Art. 2323. The jury returned a verdict which cast Huey Marler solely and 100% responsible for his own injuries.
The transcript provides the trial court’s oral reasons for rejecting the requested instructions on strict liability:
“[J]ust because something was the law, it doesn’t necessary [sic] follow that it’s a proper jury instruction. There may be— uh — with the law, just millions of things. But we have to narrow the jury instructions down to what we consider to be basic principles and guidelines for them to deliberate.”
and later:
“Of course, as I indicated briefly earlier, the reason I didn’t get into the plaintiff’s charge was that — then I’d get into that defect situation. And then I’d have to go through all that, and the jury would wind up totally and irrepable [sic] confused. And there’s no telling what kind of a verdict they’d come up with....”
We find that in his zeal to spare the jury the possibility of confusion, the trial court committed an error of law which deprived the appellants of the protection which the precepts of strict liability afford them.
Article 1792 of the Code of Civil Procedure directs the trial court to instruct the jurors on the law applicable to the case before submitting it to them. While a trial judge is not required to give the precise instructions submitted by the litigants, it is incumbent upon him to give instructions which properly reflect the applicable law, and misleading instructions or those which omit an applicable essential legal principal constitute reversible error. Miller v. Fogleman Truck Lines, Inc., 398 So.2d 634 (La.App. 3rd Cir. 1981), writ denied, 401 So.2d 358 (La.1981).
In the case before us, the plaintiff alleged a defect in the ladder which caused its collapse, leading to the injuries suffered by Marler. Such allegations implicate the liability of the lessor and the manufacturer, both of whom are subject to the standard of strict liability.[2] Therefore, the trial court was in error when it instructed the jury concerning a negligence standard and failed to inform them of the law pertaining to strict liability.
“Since the jury verdict was not based upon or guided by an essential and correct legal principal, ... [we can] give no weight to the judgment of the trial court which implemented the jury verdict.” Gonzales v. Xerox Corporation, 320 So.2d 163 (La.1975). Additionally, since we have the entire record before us, we are constrained to review the facts and render our own decision. Gonzales v. Xerox Corporation, supra.
Our examination of the record discloses no basis for the plaintiff’s suit against the ladder’s manufacturer, M.S. Churchman Company. Simply put, the plaintiff failed to present evidence establishing a defect in either design or manufacturing of the ladder. For that reason we hold that defendant M.S. Churchman Company is not liable to the plaintiff or intervenor for injuries occurring because of the plaintiff’s fall.
*787 As to defendant Rent-It Company, the plaintiff alleged that the ladder as leased was defective in that it was not accompanied by sufficient instructions for assembly and that it lacked an essential cotter key. At trial the plaintiff testified that no one from the Rent-It Company offered to explain how to set up the ladder. This statement was impeached by the testimony of both the defendants’ general manager and the clerk who actually delivered the equipment to the Holy Savior Menard Central High School. According to the latter, oral instructions for assembly were offered and refused. Additionally, the plaintiff claimed at trial that although he was familiar with the type of equipment in question, previous lessors had assembled this for him. However, on cross examination Mr. Marler was forced to admit that he had raised a platform ladder by himself on several occasions. Further, the plaintiff made much of the fact that a warning label affixed to the side of the ladder had worn off through time and use. The importance of that fact was effectively minimized by the defendants’ expert’s testimony that the warning decal pertained to the use of a connected winch. The plaintiff has never claimed that the winch in any way contributed to his fall. In view of the above recited testimony we find that any lack of instruction for assembly was not a legal cause of the plaintiff's injuries.
Finally we address the plaintiff’s contention that the ladder supplied for his use was defective in that it lacked an essential cotter key. A cotter key is a device which, in this case, fits through the end of a bolt to prevent the bolt from sliding out and thereby disengaging the platform from the top of the ladder. The cotter key is secured by bending one of its legs back which prevents it from slipping back through the hole in the bolt. The plaintiff claims that although one cotter key was attached to the ladder by a wire, the wire on the opposite side was missing its key. To remedy the situation, the plaintiff alleges he substituted a small nail in place of the cotter key. It is the plaintiff’s contention that after several trips up and down the ladder, the substituted nail worked itself free causing the platform to fall and the ladder to collapse.
Defendant Rent-It Company’s employees testified at trial that (1) it was not cotter keys, but more stable pins which were attached to the ladder with wire; (2) both pins were in place when the ladder was delivered and when it was returned; and (3) in bold type directly above where the plaintiff signed his name on the leasing invoice is printed a warning which, in substance, advises the user to contact the lessor immediately if there appears to be any problem or missing part. On cross examination the plaintiff admitted that even if he did read the warning, which he did not remember doing, he probably would not have called the Rent-It Company because he was in a hurry to change the light bulbs. Additionally, Rent-It Company’s general manager testified that when the plaintiff returned to the store approximately a week after the accident to view the ladder, the plaintiff mentioned to the manager that he might have forgotten to put the pins in.
The defendants’ expert in mechanical engineering performed several tests on the subject ladder. The expert found that if a nail was inserted in the bolt in place of a pin or cotter key and the ladder was roughly shaken, the nail remained lodged in the bolt because of the horizontal position of the hole. Further, and assuming one bolt had completely worked loose of the platform fastening, the remaining bolt on the other side was sufficient to prevent the platform and ladder from collapsing.
The plaintiff alleged that his fall caused him headaches, a ruptured disc in his neck with attendant numbness in his hands and arms, and an incisional hernia. The plaintiff’s treating physician stated that although a hernia is an injury consistent with a fall of this type, he was unable to date the time of the hernia’s occurrence. He further stated that he released the plaintiff to return to very light duty (i.e., no heavier than 30 lbs.) in May of 1983, and released him again for light work of no more than 50 lbs. in August, 1983. The plaintiff testified that his doctor had never released him to return to work and that he had been told he would never work again.
The above is a synopsis of the testimony contained in the record before us. A full review of the record has convinced us that the plaintiff has also failed to carry his burden of proof in his claim against the lessor of the ladder. Even if the second pin was missing from the equipment (i.e., a defect in the ladder), we find the weight of the evidence is against the plaintiff’s allegations of how the accident occurred.
*788 For the above and foregoing reasons the judgment of the district court in favor of defendants Rent-It Company, Inc. and M.S. Churchman Company is affirmed. All costs on appeal are to be equally borne by the plaintiff-appellant, Huey P. Marler, and the intervenor-appellant, Diocese of Alexandria-Shreveport.
AFFIRMED.

. While the term "ladder” is used herein, "elevated work platform” is more descriptive in that the device has a flat top which allows the user to work some 16-18 feet in the air. The top platform, prior to assembly of the ladder, is folded down and must be raised and locked into place by two bolts which are placed through metal holes in the platform and frame, and which in turn are held in place by pins inserted through small holes in the bolts.

. A lessor’s strict liability for defects in the thing leased is established in La.C.C. Art. 2695. Wilson v. Voss, 361 So.2d 312 (La.App. 1st Cir. 1978), writ denied, 363 So.2d 214 (La.1978). Further, this strict liability of the lessor applies to both movables and immovables. Lyons v. Jahncke Service, Inc., 125 So.2d 619 (La.App. 1st Cir. 1960). Jowers v. Commercial Union Insurance Co., 435 So.2d 575 (La.App. 3rd Cir.1983), restates the principle that a manufacturer is strictly liable for vices or defects in his product.