763 So.2d 50 (2000)
Elizabeth WILLIAMSON, et al.
v.
ST. FRANCIS CABRINI HOSPITAL OF ALEXANDRIA, et al.
No. 99-1741.
Court of Appeal of Louisiana, Third Circuit.
May 10, 2000.
Rehearing Denied June 28, 2000.
Writ Denied October 6, 2000.
*52 Daniel Brenner, Bolen & Erwin, Alexandria, Counsel for Plaintiffs-Appellants.
C. Edgar Cloutier, Christovich & Kearney, New Orleans, Counsel for Defendants-Appellees.
(Court composed of Judge HENRY L. YELVERTON, Judge BILLIE COLOMBARO WOODARD, Judge GLENN B. GREMILLION).
GREMILLION, Judge.
This appeal arises out of an alleged trip and fall accident at St. Francis Cabrini Hospital (Hospital) in Alexandria, Louisiana. The plaintiffs, Elizabeth and Riley Williamson, brought suit against Otis Elevator Company (Otis) alleging that the elevator, built and maintained by Otis, malfunctioned causing Elizabeth to trip.

FACTS AND PROCEDURE
On the afternoon of December 9, 1996, the Williamsons boarded the number two elevator in the annex of the Hospital after leaving Elizabeth's doctor's office on the second floor of the hospital annex. When the elevator arrived at the ground floor, Riley exited without incident, however, Elizabeth tripped and fell to the floor, landing on her knee. The fact that Elizabeth fell is undisputed.
The Williamsons did not immediately report the alleged accident to anyone at the hospital, but rather returned to their home in Lecompte, Louisiana. They later reported the incident to the hospital by telephone. Katherine Hilton, the hospital's Assistant Risk Manager, took the call and memorialized the substance of the complaint in a "Variance Report." Hilton testified that Elizabeth asserted that she "stumbled over the opening between the elevator and the floor." Hilton offered Elizabeth the option of a medical examination, but she declined the offer as she did not feel it was necessary. The next day, Elizabeth again called the hospital; on this occasion she complained of injuries as a result of the incident and requested a doctor's appointment.
Pursuant to Elizabeth's call, Hilton scheduled an appointment for her with the Hospital's occupational director, Dr. Brown.[1] Elizabeth saw Dr. Brown on December 10, 1996 and Jan. 16, 1997. Later, Elizabeth went to Bunkie General Hospital for treatment and was referred to Dr. Foster, an orthopedic surgeon in Alexandria, Louisiana. She was subsequently referred by Dr. Foster to Dr. David S. Muldowney, who treated her from September 4, 1997, to January 29, 1999.
The Williamsons claimed the elevator floor was one to two inches lower than the adjacent floor of the lobby and that Elizabeth's foot came in contact with the edge causing her to fall. They asserted that the unlevel condition was caused by the presence of hotter than normal hydraulic oil within the elevator's hydraulic system. The Williamsons originally brought suit *53 against both the Hospital and Otis, however, the Hospital was dismissed from the suit after the trial on the merits began.
All seventeen elevators of the St. Francis Cabrini Medical Complex were manufactured, installed, and maintained by Otis. All maintenance and repair to the elevators was performed exclusively by Otis employees. Otis provided two types of services to the hospital: routine maintenance/repair and call back services. Call backs were service calls performed in addition to the routine maintenance/repairs and were initiated by a customer's complaint advising Otis of a specific problem. Routine maintenance/repair services were performed by Jessie Cambers in his daily visits to the hospital. Among his duties, Chambers rode the elevators to verify that they were operating properly and checked the hydraulic fluid and contacts. Records of call backs were kept by the Hospital and documented in a "Supervisor's Survey Report," but no records were kept concerning routine maintenance. There were six call backs on the elevator in question during 1996 and zero misleveling complaints in the year leading up to December 1996. Eight days after the alleged accident, a leveling problem was noted with the elevator which required the P.T.O. (thermal overload mechanism switch) be reset.
In 1979, Elizabeth underwent back surgery at the L4-5 disc level and was diagnosed as suffering from general degenerative arthritis throughout her body. She is now diagnosed as suffering from wide-based posterior left lateral disc herniation at L4-5, posterior lateral disc herniation at L5-S1, as well as a horizontal oblique tear of the posterior horn of the medial meniscus. She also has some arthritic changes on the under surface of the patella and has endured severe headaches from a strained neck. Elizabeth was prescribed a regime of muscle relaxers, pain medication, antidepressants, sleep medication, and massage to treat her condition. She was also referred to Dr. Norman Anseman, a psychiatrist.
At trial, the Williamsons sought to have the trial court charge the jury as to the application of the principle of res ipsa loquitur to the facts and evidence presented, but the trial court refused their request. After a trial on the merits, the jury found no liability on the part of Otis. The Williamsons appeal asserting that: 1) the trial court committed manifest error in refusing to charge the jury with the principle of res ipsa loquitur, and 2) the no documentation policy of Otis created a presumption against it, and that such evidence would have been adverse to the liability interest of Otis. As such, the Williamsons argue that the jury committed manifest error in failing to find Otis at fault.

ASSIGNMENT OF ERROR NUMBER ONE

Standard of Review
The Williamsons assert that the trial court committed "legal error" in refusing to give the jury a specific charge regarding res ipsa loquitur. We have held that a trial court is not required to give each specific jury instruction requested by a party. Iorio v. Grossie, 94-846 (La.App. 3 Cir. 10/4/95); 663 So.2d 366. However, a trial court should give all requested instructions that correctly state the law, provided that they are material and relevant to the litigation. Lincecum v. Missouri Pacific R.R. Co., 452 So.2d 1182 (La.App. 1 Cir.), writ denied, 458 So.2d 476 (La.1984). Omission of a requested instruction containing an essential legal principle may constitute reversible error. Evangeline Farmers Coop. v. Fontenot, 565 So.2d 1040 (La.App. 3 Cir.1990). Nevertheless, a trial court has fulfilled its duty if its instructions fairly and reasonably point out the issues presented by the pleadings and evidence and provide the principles of law necessary to resolve those issues. Crooks v. National Union Fire Ins. Co., 620 So.2d 421 (La.App. 3 Cir.), writs denied, 629 So.2d 391, 392 (La.1993).
*54 An appellate court must exercise great restraint before overturning a jury verdict on the basis of erroneous instructions. Creel v. S.A. Tarver & Son Tractor Co., 537 So.2d 752 (La.App. 1 Cir.1988). We will overturn the jury's verdict on the basis of such an error only if the instructions, taken as a whole, were so incorrect or inadequate as to preclude the jury from reaching a verdict based on the relevant law and facts. Laborde v. Velsicol Chem. Corp., 474 So.2d 1320 (La.App. 3 Cir.1985), writs denied, 480 So.2d 738 (La.1986). Ultimately, the pertinent inquiry is whether the jury was misled to such an extent that a just outcome was frustrated. Creel, 537 So.2d 752.
An appellate court may not set aside a trial court's findings of fact in the absence of manifest error or unless it is clearly wrong. Stobart v. State, Through DOTD, 617 So.2d 880 (La.1993); Rosell v. ESCO, 549 So.2d 840 (La.1989). The appellate court must determine not whether the trier of fact was right or wrong, but whether the factfinder's conclusion was a reasonable one, after reviewing the record in its entirety. Mart v. Hill, 505 So.2d 1120 (La.1987); Stobart, 617 So.2d 880; Rosell, 549 So.2d 840.

Application of Res Ipsa Loquitur
The Williamsons contend that the trial court erred in not instructing the jury on the doctrine of res ipsa loquitur. The Louisiana Supreme Court addressed the application of res ipsa loquitur in Montgomery v. Opelousas Gen. Hosp., 540 So.2d 312 (La.1989). The court stated:
The principle of res ipsa loquitur is a rule of circumstantial evidence that infers negligence on the part of defendants because the facts of the case indicate that the negligence of the defendant is the probable cause of the accident, in the absence of other equally probable explanations offered by credible witnesses. The doctrine allows an inference of negligence to arise from the common experience of the factfinder that such accidents normally do not occur in the absence of negligence.
Id. at 319 (citation omitted).
Circumstantial evidence is "evidence of one fact, or of a set of facts, from which the existence of the fact to be determined may reasonably be inferred." W. Page Keeton et al., Prosser and Keeton on the Law of Torts § 39, at 248 (5th ed.1984); Boudreaux v. American Ins. Co., 262 La. 721, 264 So.2d 621 (1972). Res ipsa loquitur is a "qualification of the general rule that negligence is not to be presumed" and, as such, must be conscientiously applied. Day v. National U.S. Radiator Corp., 241 La. 288, 128 So.2d 660, 665 (1961). The doctrine is generally applicable when the following requirements are satisfied:
1) the circumstances surrounding the accident are so unusual that, in the absence of other pertinent evidence, there is an inference of negligence on the part of the defendant; 2) the defendant had exclusive control over the thing causing the injury; and 3) the circumstances are such that the only reasonable and fair conclusion is that the accident was due to a breach of duty on defendant's part.
Spott v. Otis Elevator Co., 601 So.2d 1355 (La.1992).
Before a res ipsa loquitur instruction is given, the plaintiff must establish that the doctrine is applicable. Cangelosi v. Our Lady of the Lake Med. Ctr., 564 So.2d 654 (La.1989). "The plaintiff does not have to eliminate all other possible causes or inferences, but must present evidence which indicates at least a probability that the injury would not have occurred without negligence." Id. at 666. For the doctrine to be applicable "the conduct of the plaintiff or of a third person [must] be sufficiently eliminated by the evidence as a more probable cause of the injury." Id. at 665. "Indeed, it is satisfied if the circumstances indicate that it is more probable than not that the defendant caused the accident and other plausible *55 explanations do not appear to be the probable cause of the accident." Spott, 601 So.2d at 1362.
The Williamsons contend they have met the perquisites of a res ipsa loquitur instruction. The genesis of the Williamsons' claim is that oil used in the elevator's hydraulic system rose to a temperature that caused the elevator to stop lower than floor level. The Williamsons point to the fact that the elevator's P.T.O. tripped on two occasions before the date of the subject incident. They claim that the oil in the hydraulic elevator became too hot causing it to mislevel, which in turn activated the elevator's re-leveling system. As a result of the strain of releveling, the pump of the releveling system overheated, tripping the P.T.O. Because Otis' records reflect two incidences of a P.T.O. trip prior to the alleged accident, the Williamsons contend that Otis should have been on notice that there was a defect in the elevator system that could cause it to mislevel.
The plaintiffs' expert, Kevin McCue,[2] opined that the elevator in question may have misleveled because: 1) the hydraulic fluid utilized in the operation of the elevator became too hot, "affecting the way the control system works" or 2) that "there was debris in the [hydraulic fluid] line which prevented the valves from closing properly."[3] He explained that the control system of an elevator is set to operate with the hydraulic fluid at a certain viscosity, and that the viscosity was dependent on the temperature of the fluid. He further explained that the fluid was heated by the friction created when it moved through the system and that the heat generated changed the viscosity of the fluid, making it thinner or more watery. He surmised that, when the viscosity of the fluid changed, the hydraulic piston which raised and lowered the elevator reacted differently causing the elevator to "go down a little bit too far." The Williamsons also presented as evidence a report by an Otis supervisor dated October 28, 1996, which noted that the elevator in question had "hot oil." They further assert that nothing was done to alleviate the problem between August 28, 1996 and December 9, 1996, as Otis did not document any maintenance.[4] McCue also testified that switches in the hoist way of the elevator shaft detect where the elevator is located relative to the floor openings and, when an elevator does not align itself correctly with a floor opening, a "re-leveling system" is triggered. He testified there was a possibility that this type of failure would only manifest itself on an intermittent basis.
In relating what occurred, Elizabeth testified in deposition that, "My right shoe and toe, you know, kind of went in that crack." She reiterated this statement by further stating, "My foot hung in the crack. And there was a crack there and my foot, my shoemy foot, rather, got caught in the crack." When asked if she saw the elevator unlevel with the floor, Elizabeth responded, "I looked to see what tripped me and it was in the elevator. That's what caught my toemy shoe." When questioned whether she knew that there was supposed to be a space between the floor and the elevator, she responded, "No, I didn't know that."
Chambers, a retired thirty-two year employee of Otis, testified that he actually installed the elevator in question and checked it three times a week as part of his duties as the Alexandria area maintenance repairman for Otis. Chambers testified *56 that it was possible for hot oil to create a misleveling, but qualified this by stating that he had never seen hot oil cause such a problem.
Earl Abraham, a retired forty-five year employee of Otis, held among other positions that of district maintenance supervisor and engineering consultant. He testified that, in addition to the regular maintenance, a maintenance supervisor inspected the elevator in question to determine if the mechanics were following proper maintenance procedures and found no problems. In addressing McCue's testimony regarding the possibility of hot oil causing the P.T.O. to trip, Abraham explained that a P.T.O. does not respond to the heat of the hydraulic pump or of the hydraulic oil, but rather responds to the electrical current running through sensors in the elevator's controller. He stated that, "[T]he elevator can run all day long, up and down, up and down, carrying passengers and never trip a P.T.O..... [I]t's only when you have a unique current situation that you will trip a P.T.O. and that's what it's there for." He further affirmed that the P.T.O. had nothing to do with leveling. Thus, it was Abraham's testimony that, even if hot oil had been present in the elevator, this would not have resulted in the P.T.O. circuit tripping, as the two phenomena are distinct. According to Abraham's and McCue's testimony, in order for the elevator to have behaved as the Williamsons described, there would have to have been simultaneous failures of two separate elevator components. When an elevator does not level properly a re-leveling system is initiated. Thus, for a leveling problem to occur both the initial leveling system and the re-leveling system must fail.
Before a res ipsa loquitur instruction is given, the plaintiff must establish that the doctrine is applicable. Cangelosi, 564 So.2d 654. A trial court is required to give only those jury instructions that are material and relevant. Segura v. State Farm Ins. Co., 94-1428 (La. App. 3 Cir. 5/31/95); 657 So.2d 1047. Expert testimony is not conclusive, and the opinions expressed by experts are generally regarded as advisory in nature. As such, they are not binding on the trier of fact. State Through Dep't. of Highways v. McPherson, 261 La. 116, 259 So.2d 33 (1972). As a prerequisite to invoking the res ipsa loquitur doctrine, the Williamsons had to not only present evidence that it was more probable than not that the complained of injury would not have occurred in the absence of negligence on the part of Otis, but also sufficiently excluded their own negligence as well as that of third parties. We find that they did not meet this burden.
Given the circumstances surrounding Elizabeth's accident, we find the trial court was both reasonable and within its discretion to deny the Williamsons' request for a res ipsa loquitur instruction. The Williamsons neither demonstrated that it was more probable than not that Elizabeth's fall was a result of negligence on the part of Otis, nor did they sufficiently exclude their own negligence. Indeed, based on the evidence presented, the conclusion that the probable cause of Elizabeth's fall was an accidental misstep is both reasonable and fair. Even if the instruction had been given, there is an adequate amount of evidence to rebut any inference of negligence on the part of Otis that the jury may have granted as a result of the application of the doctrine. The doctrine only permits an inference of negligence from the circumstances surrounding an injury; it assists a plaintiff in presenting a prima facie case, but does not create a presumption or require the trier of fact to infer negligence from the circumstances of an event. The case presented has too many equally feasible suppositions to apply the res ipsa loquitur doctrine. Therefore, we find no merit in this assignment of error.

ASSIGNMENT OF ERROR NUMBER TWO
The Williamsons contend that Otis' policy of not documenting regular *57 maintenance should raise a presumption of negligence against Otis. However, we are precluded from addressing this assignment as the record reveals that no jury instruction was requested on "adverse presumption" nor was an objection made that such an instruction was not given. Furthermore, we are precluded from addressing issues raised for the first time on appeal. Stephenson v. Van Vleit, 96-1407 (La.App. 3 Cir. 4/30/97); 693 So.2d 858, writ denied, 97-1431 (La.9/19/97); 701 So.2d 174. We, therefore, find no merit in this assignment of error.

CONCLUSION
For the foregoing reasons, we affirm the holding of the trial court. All costs are assessed against plaintiffs-appellants, Elizabeth and Riley Williamson.
AFFIRMED.
NOTES
[1] The first names of Drs. Brown and Foster were not evident in the record.
[2] McCue testified that he never maintained, studied, designed, or was involved with the design of any elevator, but was qualified as an expert in mechanical engineering.
[3] No evidence was introduced to further the theory that debris in the hydraulic fluid line caused a misleveling.
[4] Chambers testified that it is both the policy of Otis as well as that of the industry not to document routine maintenance.