FORET, Judge.
Plaintiff, Alcee Bertrand, Jr., sued Browning-Ferris Industries Chemical Services, Inc. (BFI) for damages for bodily injuries, loss of earnings, and medical expenses resulting from an accident which occurred on February 15, 1983, at BFI’s Willow Springs waste disposal facility northwest of Lake Charles. Commercial Union Insurance Company, the worker’s compensation insurer for McManus Construction Co.,[1] filed an intervention seeking subrogation for weekly compensation benefits and medical expenses paid to and on behalf of plaintiff. Judgment was rendered on September 5, 1985, in favor of defendant, BFI, dismissing the demands of plaintiff and intervenor. It is from this judgment that plaintiff and intervenor have appealed.
FACTS
Plaintiff is a professional truck driver. He sustained injuries to his low back on February 15, 1983, while in the course and scope of his employment as a dump truck driver for McManus Construction. He brings this action against BFI, not his employer, for failure to warn of a premises hazard. Plaintiff’s employer was Sheldon McManus, doing business as McManus Construction, who was engaged principally in selling and hauling dirt.
BFI is in the waste disposal business. For hazardous waste storage, BFI excavates large pits with the sides sloping approximately 45 degrees from the bottom to ground level. It then lines the bottom and the sloping sides with several feet of clay, which is then compacted by machinery in order to avoid any pollution from migrating into and contaminating the surrounding soil or underground water. In the course of the excavating, clay is hauled out of the pit and stored nearby for future relining of the pit.
In January of 1983, defendant had a need for a large amount of clay, which McManus agreed to provide. McManus assigned his five trucks to the delivery of the clay and engaged an additional sixteen or seventeen owner-operated dump trucks in order to speed up delivery. BFI owned trucks that could have been used to haul in the clay, but they were occupied at another facility at the time.
There was no contract for any specified amount of clay, only an agreement to deliver in quantity until the need was fulfilled. McManus’ only obligation was to send the clay to defendant and have the trucks dump it where directed by defendant’s employees. McManus had nothing to do with the use made of the clay, that being handled by defendant’s employees using its own machinery.
In February, McManus had his trucks continuing delivery into the nighttime until the truck drivers felt constrained to stop. BFI was accepting deliveries on the night of February 15th, having one of its employees, a Mr. Bass, act as a spotter to show each driver where to dump his load. Dumping was on a flat surface at ground level at or near the edge of an open pit in which bulldozers were spreading the clay. The area of dumping was forty-five feet wide and was adjoined on the north side by *169 a rectangular lagoon and filled, to within about three feet of ground level, with liquid. The trucks were entering the forty-five foot wide strip from access at the southeast corner of the lagoon, three hundred feet west of the dumping site. The south side of the forty-five foot wide strip bordered the pit under construction for a short distance and the remainder by a dirt embankment about three feet high upon which were stored piles of dirt perhaps eight feet high, in places. That area continued sixty-five feet further west than the lagoon.
The trucks reached the area by access roads through defendant’s property and eventually along the west end of the lagoon. It was left up to each truck driver how he would traverse the approximately three hundred feet along the forty-five foot wide strip. They could make a left turn around the southwest corner of the lagoon and drive east along the “roadway.” They would then need to turn their truck around, dump the load of clay where directed by Bass, and leave by the same route they entered the area. Optionally, they could, and apparently most did, make a right turn upon passing the southwest corner of the lagoon, stop, and back their trucks along the forty-five foot strip the approximately three hundred feet to the spotter, using their side-mounted rear view mirrors to watch Bass for hand signals as to where to stop and dump their load.
Plaintiff began hauling loads at 7:00 A.M. on February 15, 1983. He continued all day, traveling the approximately six-mile distance from where the clay was loaded onto his truck to the point of delivery. A thirty-minute break was taken for lunch and his evening meal. At or about 9:30 P.M., he arrived at the “turn-around” area, made a right turn, stopped his truck, got out, and walked around the rear of his truck. He testified that he knew of the lagoon and looked at its corner to make sure he would avoid it in backing down the “roadway.” Another truck was in the process of dumping its load, but, there being ample room for the trucks to meet and pass on the “roadway,” plaintiff began backing his truck. For reasons he cannot explain, he backed into the corner of the lagoon, and the truck turned over onto its right side. Plaintiff climbed out of the truck without getting into the liquid in the lagoon.
Plaintiff was rushed to the Cal-Cam Hospital in Sulphur, Louisiana, a few miles to the south, by Mr. Doughty, defendant’s night superintendent. His lengthy medical and surgical treatment ensued.
ISSUE
The principal issue in this case is the application of strict liability under LSA-C.C. art. 2317 against BFI for a premises hazard: “the open, unguarded lagoon.” The record reflects that the perimeter of the lagoon was not marked by warning lights, reflectors, barricades or embankments high enough to stop a truck which may run into it. No fence, iron railing, or flags marked the lagoon. There was a low levee, or berm, about eighteen inches high, around the lagoon to prevent surface water from draining into it. The berm was slightly higher in some areas, depending upon surface elevation, but there was not a showing of the irregularity at or near its southeast corner.
The lagoon was man-made by BFI to serve its business purpose. Plaintiff contends that the lagoon was inherently dangerous to business invitees who were required to drive trucks along or near the lagoon’s edges. BFI contends that the lagoon was obvious and apparent, not concealed.
The record reflects that adequate “roadway” area was provided along the lagoon's western and southern sides for truck travel for delivery of the clay being purchased. Plaintiff was a capable and experienced dump truck driver, very much aware of the location of the lagoon and his truck in relation to it. Plaintiff had looked at the lagoon and exercised his judgment about what maneuver he was going to, and did, execute. He made an individual choice to turn his truck and back it up rather than *170 drive forward to the dumping area while having the lagoon clearly within his vision the entire time he was making his delivery and leaving the area.
Some conflict in the testimony presented at trial leaves unclear the intensity of the lighting in the area where the accident occurred. The testimony varies from light enough to read the headlines but not the smaller print in a newspaper to lighting as brilliant as that on a football field. The trial court stated in its reasons for judgment that it was not necessary for it to resolve the conflict in the testimony by accepting or rejecting either version. Instead, the court accepted as admitted and proved that one could see the lagoon, as did the plaintiff.
The trial court found that the responsibility for backing the truck into the edge of the lagoon rested upon the plaintiff. The issue then becomes whether the defendant had a duty to prevent the plaintiff from being able to back the truck into the edge of the lagoon or whether the defendant had a duty to in some manner make the lagoon’s presence more obvious than it already was by simply looking at it. The record contains implications that red warning lights at the corner would have been apparent in plaintiffs rear view mirrors and thereby have alerted him as he backed toward the lagoon. The record reflects that other truck drivers could see the “roadway” the entire three hundred feet behind them as they backed their truck along it, as well as observe hand signals of Bass at that distance. No other truck drivers drove off the lagoon’s edge.
The trial court noted that victim fault and assumption of the risk are defenses in a strict liability case. The trial court stated that it was unable to find any negligence on the part of the defendant by failing to do more than provide a safe, amply lighted “roadway” for the delivery of the clay. The court further held that plaintiff was clearly at fault and certainly assumed any risk in choosing to place himself in a peril not demanded of him. We agree with the trial courts reasons for judgment.
A landowner and operator of a facility must exercise reasonable care for the safety of persons on or around his property. Owen v. Kerr McGee Corporation, 698 F.2d 236 (5th Circuit 1983). However, a landowner is not liable for injury sustained which results from a condition which should have been observed by the individual in the exercise of reasonable care or which was as obvious to a visitor as it was to the landowner. Guillory v. Audubon Insurance Co., 417 So.2d 892 (La.App. 3 Cir.1982). (Emphasis ours.) The record reflects that plaintiff observed the lagoon and assumed the obvious normal or ordinary risks attendant on the use of the premises. Plaintiff had actual knowledge of the lagoon; he got out of his truck in order to relate distances from his truck to the lagoon so that he would be sure to avoid backing into it. He clearly assumed the remote risk of backing in. Landos v. Rockwell Intern. Corp., 470 So.2d 924 (La. App. 3 Cir.1985), writ denied, 477 So.2d 87 (La.1985). He had been on the premises all day before the accident occurred. Consequently, we do not believe that the lagoon constituted premises hazard which presented an unreasonable risk of harm under the circumstances. Bordelon v. Southern La. Health Care Corp., 467 So.2d 167 (La.App. 3 Cir.1985), writ denied, 469 So.2d 989 (La.1985).
Because of the foregoing findings, we need not decide whether or not plaintiff was an employee of BFI.
For the foregoing reasons, the judgment of the trial court is affirmed. Costs of this appeal are taxed one-half each to plaintiff and intervenor.
AFFIRMED.

. Sheldon McManus is the owner of and does business as McManus Construction Company.