542 So.2d 1146 (1989)
George ELDRIDGE and Vickie Eldridge, Plaintiffs-Appellants,
v.
BONANZA FAMILY RESTAURANT and Wausau Underwriters Insurance Company, Defendants-Appellees.
No. 88-80.
Court of Appeal of Louisiana, Third Circuit.
April 19, 1989.
*1147 Woodley, Williams, Fenet, Palmer, Doyle & Norman, Tom Solari, Lake Charles, for plaintiffs-appellants.
Raggio, Cappel, Chozen & Berniard, Paul Foreman, Lake Charles, for defendants-appellees.
Before GUIDRY, STOKER and KING, JJ.
KING, Judge.
The issue presented by this appeal is whether the trial court was correct in granting summary judgment in favor of defendants, finding that they were not negligent or strictly liable for injuries received by plaintiff in a fall from defendants' roof.
George Eldridge (hereinafter sometimes referred to as the plaintiff) and his wife, Vickie Eldridge, filed suit against Bonanza Family Restaurant and Wausau Underwriters Insurance Company for damages arising from an accident occurring on January 28, 1987 at the Bonanza Family Restaurant located in Sulphur, Louisiana. In an amended and supplemental petition, plaintiffs added as defendants John Mason d/b/a Bonanza Family Restaurant of Sulphur and United States Fidelity and Guaranty Insurance Company (hereinafter sometimes referred to as defendants). Plaintiffs thereafter moved to dismiss Wausau Underwriters Insurance Company without prejudice on the ground that it was not the proper insurer of John Mason d/b/a Bonanza Family Restaurant of Sulphur on the date of the accident. In a second amended and supplemental petition, plaintiffs added Mart Systems, Inc., an additional owner/operator of the restaurant, as an additional defendant. Plaintiffs contended that defendants were negligent and/or strictly liable, jointly and in solido, for plaintiff's accident and resulting damages in the amount of $230,000.00 plus legal interest from the date of judicial demand, until paid, and court costs. Defendants filed a motion for summary judgment, asserting that there was no genuine issue as to material fact and that defendants were entitled to judgment as a matter of law. The trial court granted defendants' motion for summary judgment on December 14, 1987, dismissing all claims of plaintiffs at their cost. A formal written judgment was signed on December 18, 1987. A timely devolutive appeal was taken on January 4, 1988. We affirm.

FACTS
Plaintiff, George Eldridge, and his brother, Carl Eldridge, are the principal stockholders and employees of a small corporation which specializes in sheet metal work, welding, air conditioning repair, and other labor. Plaintiff was contacted by C & W Refrigeration and asked to remove, clean, and replace a large exhaust fan on the roof of the Bonanza Family Restaurant located in Sulphur, Louisiana. The fan grease trap was full of grease. C & W Refrigeration was to install a new fan grease trap after plaintiff had removed the exhaust fan, taken off the old fan grease trap, and cleaned the grease from the fan. Plaintiff was to then replace the exhaust fan on the roof. Plaintiff admitted in his deposition that he knew that there was grease in the fan grease trap and that he was aware that there was grease leakage from the fan grease trap on the roof. He further testified that he could plainly see the grease leakage when he examined the roof.
Plaintiff first examined the roof on the afternoon before his accident and saw that the grease formed a trail, originating from the exhaust fan, flowing down the roof and going into the roof gutter. Plaintiff procured a crane and brought it to Bonanza Family Restaurant on the day of the accident. When plaintiff arrived on location, a representative from C & W Refrigeration was present. Plaintiff was provided a ladder with rubber pads on its base. He personally erected and placed the ladder on the concrete at an angle to the roof before ascending the ladder. After plaintiff and his son loosened the fan from its structure, *1148 the son returned to the ground to prepare the crane for lifting. The crane lifted the fan and plaintiff disconnected the wiring. As the fan was lowered to the ground, plaintiff began his descent from the roof. Plaintiff was wearing leather shoes with a crepe rubber sole and heel. He placed his left foot on the first rung of the ladder; but, as he brought his right foot down on the first rung, his left foot slipped to the second rung. Plaintiff admitted that he had not placed his entire left foot on the ladder, but only his toe. As he slipped, his weight shift caused the ladder to fall down to the concrete. Plaintiff managed to grab the roof gutter, but it broke loose from the building. Plaintiff fell to the ground, sustaining injury to his right knee and breaking his left foot. Plaintiff also complained of back pain, but admitted that it had originated before the accident. It was later discovered that plaintiff had stepped in grease as he walked across the roof. He admitted that "... undoubtedly I stepped on some grease that could have caused me to slip." Plaintiff admitted he saw grease on his left shoe sole after he had fallen. Plaintiff further testified that he had prior experience in changing exhaust fans that leaked grease and knew that he should not step in the grease. He admitted that he saw the grease and was aware of the danger, but he "really wasn't thinking" about the possibility of falling.
Plaintiff claims that although his corporation was covered by worker's compensation insurance, he was not personally covered because he had exempted himself from coverage to reduce his corporation's insurance premiums. For twelve weeks plaintiff wore a cast on his foot, and he had two temporary employees working in his place. Plaintiff continued to draw his usual salary during his twelve week convalescence. After the twelve weeks, plaintiff returned to work and began engaging in activities which did not involve climbing. Plaintiff candidly admitted that there had been no friction or yelling between him and his wife since the accident, nor had there been any change in their sexual relationship.
Plaintiff and his wife filed suit against defendants on May 13, 1987, claiming damages in the amount of $230,000.00 from defendants because of their negligence and/or strict liability. The damages represented $205,000.00 in medical bills, lost wages, and mental anguish claimed by plaintiff and $25,000.00 for loss of consortium claimed by his wife, Vickie Eldridge. The defendants filed answers of general denial and affirmative defenses of plaintiff's negligence.
Defendants filed a motion for summary judgment on November 13, 1987. After a hearing, the trial court granted defendant's motion in open court on December 14, 1987, and dismissed all of plaintiffs' claims at their cost. No reasons for judgment were rendered. A written judgment was signed in Chambers on December 18, 1987. A timely devolutive appeal was taken on January 4, 1988. We affirm.

LAW
The Louisiana Supreme Court discussed the motion for summary judgment in the case of Industrial Sand and Abrasives, Inc. v. L & N R. Co., 427 So.2d 1152 (La.1983), and set forth the criteria for determining whether to grant a motion for summary judgment by stating that:
"La.C.C.P. art. 966 provides that any party may move for a summary judgment at any time, and the mover is entitled to summary judgment in his favor `if the pleadings, depositions, answers to interrogatories, and admissions of file, together with the affidavits, if any, show that there is no genuine issue as to a material fact, and that the mover is entitled to judgment as a matter of law.' Sanders v. Hercules Sheet Metal, Inc., 385 So.2d 772 (La.1980); cf. Fed.Rule Civ.Pro. 56. The burden is on the mover to show clearly that there is not a genuine issue of material fact in dispute, and any reasonable doubt as to the existence of a genuine issue of material fact must be resolved against the mover and in favor of trial on the merits. Thornhill v. Black, Sivalls & Bryson, 394 So.2d 1189 (La.1981); White v. Baker Manor Nursing Home, 400 So.2d 1168 (La.App. 1st Cir.), writ den., 403 So.2d 68 (La.1981).

*1149 Cf. Erco Industries, Ltd. v. Seaboard Coast Line Railroad Co., 644 F.2d 424 (5th Cir.1981); Joplin v. Bias, 631 F.2d 1235 (5th Cir.1980).
To satisfy this burden, the mover must meet a strict standard of showing that it is quite clear as to what is the truth and that there has been excluded any real doubt as to the existence of a genuine issue of material fact. The pleadings, affidavits, and documents of the mover must be scrutinized closely, while those of the opponent to the motion are to be indulgently treated. Vermilion Corp. v. Vaughn, 397 So.2d 490 (La.1981); Mashburn v. Collin, 355 So.2d 879 (La.1977); cf. Adickes v. S.H. Kress & Co., 398 U.S. 144, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970)." Indus. Sand and Abrasives v. L & N R. Co., 427 So.2d 1152 at pages 1153, 1154 (La.1983).
Plaintiffs contend that defendants were negligent and/or strictly liable for their damages. Plaintiff specifically alleges that defendants failed to warn plaintiff of the known, foreseeable danger which could be caused by grease leaking from an exhaust fan and fan grease trap, failed to provide plaintiff with a safe work environment, and failed to exercise due care under the circumstances. Defendants argue that under either a negligence or strict liability theory, the plaintiff did not show that there was any genuine issue that there was an unreasonable risk of harm to plaintiff.
In this case, plaintiff complains of defendants' conduct in hiring him to remove and clean its grease-laden exhaust fan and fan grease trap on the roof without first warning plaintiff of the possible danger presented by the grease leakage on the roof. Under either a negligence or strict liability theory we must determine whether defendants created an unreasonably dangerous condition on its premises and then inquire whether this conduct was a cause-in-fact of plaintiff's injuries.

NEGLIGENCE AND STRICT LIABILITY
In Carter v. Bd. of Sup'rs of Louisiana St. Univ., 459 So.2d 1263, 1265 (La.App. 1st Cir.1984), writ denied, 462 So.2d 1248 (La. 1985), our brethren of the First Circuit stated:
"The owner or person having custody of immovable property has a duty to keep such property in a reasonably safe condition. This person must discover any unreasonably dangerous condition on the premises and either correct the condition or warn potential victims of its existence. This duty is the same under both the strict liability theory of LSA-C.C. art. 2317 and the negligence liability theory of LSA-C.C. art. 2315.
There is a difference in proof between these two theories of liability, however, in that under LSA-C.C. art. 2315, the plaintiff must show that the owner or custodian either knew or should have known of the risk, whereas under LSA-C.C. art. 2317, the plaintiff is relieved of proving scienter on the part of the defendant.
Under either theory of liability, the plaintiff has the burden of proving that: (1) the property which caused the damage was in the custody of the defendant; (2) the property was defective because it had a condition that created an unreasonable risk of harm to persons on the premises; and (3) the defect in the property was a cause-in-fact of the resulting injury. In both negligence and strict liability cases, the reasonableness of the risk is determined by balancing the probability and magnitude of the risk against the utility of the thing." (Emphasis added.) (Citations omitted.)
Under either of plaintiff's theories of recovery plaintiff's action would fail if the grease on the roof did not present an unreasonable risk of harm or if it was not the cause-in-fact of plaintiff's injuries. Plaintiff was a knowledgeable and experienced repairman who was fully aware of the presence of the grease leakage on the defendant's roof and who was also aware that the existence of the grease leakage on the roof was the very reason he was hired to work on the roof. Plaintiff failed to take adequate precautions to insure that he did not step in the grease leakage on the *1150 roof and then slip and fall unexpectedly. A land owner is not liable for injury which results from a condition which should have been observed by the individual in the exercise of reasonable care or which was as obvious to a visitor as it was to the landowner. Shelton v. Aetna Cas. & Surety Co., 334 So.2d 406 (La.1976), and cases cited therein; Luttrell v. International Paper Co., 532 So.2d 389 (La.App. 3 Cir. 1988); Bertrand v. Browning Ferris Industries, 502 So.2d 167 (La.App. 3 Cir. 1987), writ den., 503 So.2d 1017 (La.1987); Guillory v. Audubon Ins. Co., 417 So.2d 892 (La.App. 3 Cir.1982). Consequently, under the facts of this case, we conclude that the grease leakage on the roof did not constitute a premise hazard which, when considering its location on the roof of defendants' building and plaintiff's knowledge of the condition, presented an unreasonable risk of harm. We therefore find no strict liability on the part of defendants for a defect on the premises that created an unreasonable risk of harm to plaintiff.
The existence of the grease on the roof was not a defect constituting an unreasonable risk of harm for which defendants had a duty to warn, especially when coupled with the fact that plaintiff was hired for the very purpose of removing the fan and the fan grease trap that caused the grease leakage. There has been no showing that the condition of the grease in the fan and fan grease trap and on the roof was unreasonably dangerous and thus, under these facts, we do not impose on defendants a duty of prior discovery, correction and/or warning. The duty of a landowner is not to insure against the possibility of an accident on his premises, but rather to act reasonably in view of the probability of injury to others. Shelton v. Aetna Cas. & Surety Co., supra. For these reasons, defendants did not have a legal duty to warn plaintiff and are not liable for negligence for failure to warn. Defendants' failure to warn was not the cause-in-fact of plaintiff's injury. There is nothing in the record to suggest any factors which contributed to the plaintiff falling other than his own inattention and stepping in the grease leakage and then slipping on the ladder or his own inattention and failure to properly place his foot on the ladder and then slipping. We therefore find that plaintiff's own conduct was the cause-in-fact of his accident and injury and that the defendants were not negligent.
Having found that defendants are not liable to plaintiff for the damages he sustained by his fall, under either a theory of negligence or strict liability, we find that the trial court was also correct in dismissing Vickie Eldridge's action for loss of consortium with her husband. We therefore affirm the trial court's dismissal of Vickie Eldridge's claim for the loss of the society, support, sex, and services of her husband under the provisions of La.C.C. Art. 2315.
For these reasons we find that the trial court was not clearly wrong or manifestly in error in granting defendants' motion for summary judgment. Arceneaux v. Domingue, 365 So.2d 1330 (La.1978); Canter v. Koehring Co., 283 So.2d 716 (La.1973). There exists no genuine issue as to any material fact concerning defendants' liability for alleged negligence and/or strict liability to plaintiff or as to plaintiff's wife having no claim for damages. Defendants are entitled to judgment as a matter of law.
For the reasons assigned, the judgment of the trial court is affirmed. All costs of this appeal are taxed to plaintiffs-appellants.
AFFIRMED.