611 So.2d 818 (1992)
Philip DESORMEAUX, Plaintiff-Appellant-Appellee,
v.
AUDUBON INSURANCE COMPANY, Defendant-Appellee-Appellant.
No. 91-985.
Court of Appeal of Louisiana, Third Circuit.
December 22, 1992.
Writ Denied March 12, 1993.
Frank Dawkins, Lafayette, for plaintiff/appellant.
*819 Juneau, Judice, Hill & Adley, Michael W. Adley, Lafayette, for defendant/appellee.
Allen, Gooch, Bourgeois, Breaux, Robison & Theunissen, John H. Hughes and Alfred R. Romain, Lafayette, for intervenor/appellant.
Before DOUCET and KNOLL, JJ., and MARCANTEL[*], J. Pro Tem.
KNOLL, Judge.
This appeal concerns a slip/fall by a roof repairman in the attic of a home under the theory of strict liability. The trial court found the roof to be in a state of ruin and because Philip Desormeaux, plaintiff herein, had repaired the roof in the past without difficulty, it found defendant liable under strict liability, awarding Philip $70,868.45 against defendant, Audubon Insurance Company (Audubon), for a back injury he sustained as a result of the slip/fall. The worker's compensation intervenor, Houston General Insurance Company (Houston), was awarded the weekly compensation benefits and medical expenses it paid Philip out of the proceeds of the judgment.
All parties appeal, contesting liability and quantum, asserting that: (1) the trial court erred in imposing strict liability under LSA-C.C. Art. 2322; (2) the trial court erred in failing to find victim fault; (3) the trial court erred in failing to find liability for negligence under LSA-C.C. Art. 2315; (4) the trial court erred in concluding that Desormeaux failed to mitigate his damages by failing to submit to certain medical treatments or back surgery; (5) the damage award was an abuse of discretion; (6) the trial court erred in calculating Houston General's proportionate responsibility for attorney's fees and expenses; and (7) the judgment should be amended to award Houston General reimbursement for compensation benefits and medical expenses paid by it to or on behalf of Desormeaux since the date of trial.
For the reasons which follow, we reverse the trial court, finding that Audubon is not liable to Desormeaux under either strict liability or negligence.

FACTS
The attic in question is in a 75-80 year old 2 story home in Crowley, Louisiana, rented by Philip's father/employer, L.C. Desormeaux, and owned by plaintiff's six brothers and sisters.
The record clearly shows that Philip is a skilled general contractor and roofer. He had been employed by his father several years before the accident on May 18, 1988, as well as on the date of the accident, on a full time basis, earning $12 per hour. His father, a widower approximately 85 years of age, was a businessman and employed Philip, 51 years of age, as a general contractor, roofer, machinist, mechanic, carpenter, farmer, plumber, etc.
Approximately 2 years before the accident, the flat portions of the roof had developed several major and minor leaks. The water would eventually leak through to the second and first floors of the home. There is no dispute that the leaks were bad. Rather than replace the roof at that time, Philip and Harry Crader, another employee of L.C. Desormeaux, repaired the roof by patching it. They were in the process of building a new home for L.C. Desormeaux on the Mermentau River and delayed putting a new roof because of the construction of the new home.
Eventually the roof began to leak again. In January or February of 1988, L.C. Desormeaux asked Philip to repair the roof and stop the water leaks. At this time Philip placed 3 or 4 number 3 washtubs and some 5 gallon buckets in the attic and around the house. He would empty these buckets as they filled with rain water. Philip did this approximately 6-7 times before the accident.
On the date of the accident, May 18, 1988, Philip and Harry went to L.C. Desormeaux's house to patch repair the roof *820 again. The area of the attic where Philip was working was not floored, poorly lighted and only 4-4½ feet high. The light was approximately 20 feet away. He had to balance himself on the joists which were 2 inches wide, 12 inches deep and 14-16 inches apart.
When Philip fell, he was in the process of emptying the washtub by dipping a 5 gallon bucket in the washtub and attempting to walk over to the hatch in the roof, approximately 5-6 feet away, where Harry was positioned outside on the roof, to hand Harry the bucket, who in turn would empty it. Philip described his accident in his testimony:
"A. ... I was more or less in a stooping position or a bending over position because of the clearance in the attic. You couldn't stand up straight. So I was bending over, and I had both hands on the washon the pail. And I just dipped over and got the bucket about half full, andwhich was about as much as I could handle in that stooping position. And I, like I said, when I turned to walk toward Harry, both of my feet came from under me.
* * * * * *
A. No, II slipped. I could tell that I was slipping, and then
* * * * * *
A. ... I had my right foot on this one here [referring to # P-2], and my left foot on this one ... because when I pivoted to turn to bring my right foot to where my left was at and to move my left foot over, is when my feet slipped out from under me." (Pp. 1143-1145, Vol. 6 of record.)
Philip fell, injuring his back. After he fell, he could feel the dampness on the joists. Exhibits P-1(u)(v) and (w) show the joists were molded and mildewed.
Philip sued Audubon, the insurer[1] for his siblings who owned the home.

NEGLIGENCE AND STRICT LIABILITY
Strict liability for things in one's custody is found in LSA-C.C. Art. 2317:
"We are responsible, not only for the damage occasioned by our own act, but for that which is caused by the act of persons for whom we are answerable, or the things which we have in our custody. This, however, is to be understood with the following modifications."
These modifications are found in LSA-C.C. Art. 2322:
"The owner of a building is answerable for the damage occasioned by its ruin, when this is caused by neglect to repair it, or when it is the result of a vice in its original construction."
In order to impose liability under Article 2322 on the owner of the building, there must be: (1) a building; (2) defendant must be the owner; and (3) there must be a "ruin" caused by a vice in construction or neglect to repair. Olsen v. Shell Oil Co., 365 So.2d 1285 (La.1978).
Liability under LSA-C.C. Art. 2315 imposes the same requirements as Article 2317, the difference in the two articles being, under the theory of negligence, plaintiff must show that the owner knew or should have known of the risk, whereas under strict liability, the plaintiff is relieved of proving defendant's scienter. Eldridge v. Bonanza Family Restaurants, 542 So.2d 1146 (La.App. 3rd Cir.1989). Under either theory of liability, the plaintiff has the burden of proving: (1) the property which caused the damage was in the custody of the defendant; (2) the property was defective because it had a condition that created an unreasonable risk of harm to persons on the premises; and, (3) the defect in the property was a cause-in-fact of the resulting injury. Id. In both negligence and strict liability cases, the reasonableness of the risk is determined by balancing the probability and magnitude of the risk against the utility of the thing. Id.
The facts of this case present a repairman making repairs in an area that *821 presented an obvious risk of harm. The body of jurisprudence interpreting strict liability and/or negligence under these circumstances is well established. An owner is not liable for injury which results from a condition which should have been observed by the plaintiff in the exercise of reasonable care or which was obvious. Eldridge, supra; David v. Reon, 520 So.2d 820 (La. App. 3rd. Cir.1987), writ denied, 522 So.2d 564 (La.1988). An owner is not liable to a repairman when the unsafe manner of repair to the building by the repairman caused the injury. Stine v. Creel, 417 So.2d 1243 (La.App. 1st Cir.1982), writ denied, 422 So.2d 163 (La.1982); Mason v. Liberty Mut. Ins. Co., 423 So.2d 736 (La. App. 4th Cir.1982); writ denied 425 So.2d 773 (La.1983); Annis v. Shapiro, 517 So.2d 1237 (La.App. 4th Cir.1987). See also, Stoute v. South Carolina Ins. Co., 524 So.2d 879 (La.App. 3rd Cir.1988), writ denied, 525 So.2d 1049 (La.1988).
The trial court found that the roof had fallen into "ruin" as a result of the neglect of the owners,[2] and then held:
"Philip Desormeaux had previously entered the attic of this home to empty the washtubs positioned there and had accomplished this without any difficulties. He was attempting to do his job in the only way manageable under the conditions presented by the attic construction. He cannot be said to have had knowledge of the difficulties or hazards presented by the attic; he had accomplished this same task on previous occasions with no difficulty. The evidence shows that the accident was caused by the water which was present on the ceiling joists. Whether the water came directly from the leaking roof or from the overflowing of the washtub is immaterial for the very presence of the water in either case was a result of the severely damaged roof ..."
We find the trial court clearly erred in its conclusion as to the cause-in-fact of the accident. The evidence is clear that Philip was in the process of repairing the roof. He was a skilled repairman and was fully aware of the obvious condition in the roof and attic. The dangers of the work area were obvious. Philip took no measures to reduce the dangerous work area, e.g. adding more light and making a walkway over the joists. He clearly voluntarily chose to empty the washtub in an unsafe manner, lost his footing and fell. This was the cause-in-fact of the accident. Whether the dampness on the joists was water or mildew was not developed at trial nor do we find that aspect to be important. It was the unsafe manner Philip employed to empty the washtub that caused him to fall. The trial court found "the water which was present on the ceiling joists" caused the accident. While we recognize there was water on the joists, this fact alone is not sufficient to impose liability. The trial court placed emphasis on the fact that Philip had emptied the washtub several times in this manner without incident, therefore, Philip was not aware of the hazards the attic presented. The trial court placed no emphasis on the fact that Philip was a repairman in the act of repairing an obvious defect in a negligent manner. These facts have significant value, as cited in the jurisprudence above, and it was clear error by the trial court to ignore these facts. But for Philip's unsafe manner in emptying the washtub by balancing himself on joists in a stooped position, in a poorly lighted area, carrying a bucket of water, he would not have fallen. With this finding, we pretermit discussion of the remaining assignments of error.
For the foregoing reasons, the judgment of the trial court is reversed. Judgment is recast as follows:
IT IS ORDERED, ADJUDGED AND DECREED that there be judgment herein in favor of Audubon Insurance Company and against Philip Desormeaux, dismissing his petition with prejudice.
IT IS FURTHER ORDERED, ADJUDGED AND DECREED that the intervention of Houston General Insurance *822 Company is hereby dismissed with prejudice.
Costs of trial and this appeal are taxed equally between Philip Desormeaux and Houston General Insurance Company.
REVERSED AND RENDERED.
NOTES
[*] Judge Bernard N. Marcantel participated in this decision by appointment of the Louisiana Supreme Court as Judge Pro Tempore.
[1] At the time suit was filed, November 14, 1988, Louisiana's direct action statute, LSA-R.S. 22:655, allowed Philip to sue the insured alone without naming his siblings as defendants.
[2] Audubon does not admit that the roof's condition constitutes "ruin" as interpreted in the jurisprudence, since it did not fall or collapse. We will pretermit a discussion of this issue since we do not find the condition of the roof was the cause-in-fact of the accident.