GUIDRY, Chief Judge.
Plaintiffs, Beatrice Winnette Bennett, her husband and children, appeal a judgment of the trial court dismissing their suit for damages against the City of Lafayette. We affirm.
The trial judge rendered written reasons for judgment which we quote approvingly:
This personal injury action arises out of an accident which occurred on July 26, 1990, at Acadiana Park in the City of Lafayette. The plaintiff was the owner of Winnette’s Early Childhood Development, a day care center for young children. On the day of the accident, the plaintiff took six of the children, all under age ten, to visit the park for playtime.
Acadiana Park, owned and maintained by the City of Lafayette, is much larger than the typical city park. It contains nearly 120 acres of land, about half of.which is undisturbed natural woodland. There is traditional playground equipment in one area, and there are tennis courts, a soccer field and a basketball court in another. The remainder of the park is woodland, some of which is developed as a campground and nature station with designated trails maintained through a naturally preserved and moderately rugged flood plain adjacent to the Vermilion River. Visitors may take advantage of guided tours along these “nature trails”, or they may walk along them without supervision. The trails are marked by signs, and visitors may obtain a map of the area at the nature station. Visitors are encouraged to remain on the trails so as not to disturb the natural woodland environment. The management approach of the City of Lafayette is to leave this area of the park, which con-' tains literally thousands of trees, in its natural, undisturbed state.
Mrs. Bennett remembers only going to the park on the day of the accident, and has no clear memory of any of the events leading to her injuries. One of the children, who is now thirteen years old, testified at trial that the group started out playing on the swing sets in the traditional playground area of the park. Some of the children knew about some ropes hanging in a tree where they could swing higher, and they led Mrs. Bennett to that place. All of the children, save one who was afraid, began swinging on one of two ropes hanging over a gully from a large oak tree. Mrs. Bennett attempted to swing on the other rope, presumably to test it, though she does not recall the reason, and fell. Since the rope did not break, it can only be assumed that Mrs. Bennett was unable to hold on to it.
The City of Lafayette claims to have had no actual knowledge of the existence of these ropes. The tree to which the ropes were attached was in a restricted area, not subject to periodic inspection. The curator of natural sciences for the city, William Fontenot, who manages the nature trail system, testified that the tree was on a closed trail, which he avoided so as not to disturb the natural environment. He had no knowledge of these ropes, which hung from a branch about 40 feet up in the tree down to about 4 feet from the ground. He had come upon this site accidentally at the beginning of his employment in 1987 and saw a short length of rope, about 6 feet, tied to the same branch. But since the piece of rope, which looked very old, was 30 to 35 feet above anyone’s reach, and since there was no indication that anyone had been around that tree in a very long time, he saw no reason to keep an eye on it or conduct inspections of it. His regular duties never took him to that site, since it was on a closed trail, and it would have been impossible to inspect all of the trees in the park for unauthorized ropes. The *517 city admits that it had knowledge that visitors to the park sometimes went into restricted areas despite prohibitions, but it had no reason to inspect these areas unless something was brought to their attention.
In order to reach the tree from which the ropes hung, the plaintiff left the open playground area and entered a heavily wooded section of the park thick with trees and brush. There was an opening or trail through the brush, which she followed until it formed a fork. Near this fork in the trail were two green signs with white lettering, which originally read, “Trail Closed”. Some of the letters on each sign were missing so that one read, “Trail Close” and the other, “Trai Close”. Both plaintiff and defense experts testified that the average adult should have understood that the signs were defaced and actually meant, “Trail Closed”.
Both experts agreed that the tree was on the closed trail, and that the footing near the tree was uneven and slippery. The ropes tied to the tree branch hung over a steep twelve foot incline or drop in the terrain, like a gully or ravine filled with mud and protruding tree roots. The conditions and total environment around the ropes created an obvious and clear danger.
Both experts agree further that the plaintiff must bear at least some responsibility for her injuries given the obviousness of the risk to which she subjected herself. If her purpose in swinging on this rope was to conduct a safety check for the children, it would have been much more reasonable to do so from the bottom of the incline. Pulling on the rope from the bottom and without swinging on it would have safely tested both the strength of the rope and ability of the plaintiff to hold on.
The plaintiffs claim is predicated on her belief that the defendant city had a duty to discover this admittedly dangerous situation through periodic inspection of its 120 acre park, and to remove it before members of the public, thinking this rope was part of the park’s recreational equipment, might attempt to swing upon it out over a rugged ravine.
For the plaintiff to recover under LSA-C.C. 2317, she must prove that the municipal owner of the tree from which the rope was hanging had actual or constructive knowledge of the fact that it presented an unreasonable risk of injury to others [ (see La.R.S. 9:2800); that the public entity had a reasonable opportunity to remedy the defect and failed to do so] and that her damages actually resulted from this risk. Alexander v. City of Lafayette, 584 So.2d 327 (La.App. 3 Cir.1991).
In order to determine if a risk is unreasonable the court is to use a balancing test similar to that used in negligence cases where the magnitude of the risk and the likelihood of harm is weighed against the cost or burden of preventing the risk and the social utility of the thing which caused the injury_ A potentially dangerous condition that should be obvious to all comers is not, in all instances, unreasonably dangerous. Gid-ding v. Commercial Union Ins. Co. 539 So.2d 66 (La.App.1988).
The proper question in determining landowner liability is, “whether in the management of his property he has acted as a reasonable man in view of the probability of injury to others”.
Moreover, the landowners is not liable for an injury resulting from a condition which should have been observed by an individual in the exercise of reasonable care or which was as obvious to a visitor as to the landowner. David v. Reon 520 So.2d 820 (La.App. 3 Cir.1987); Desor-meaux v. Audubon Ins. Co. 611 So.2d 818 (La.App. 3 Cir.1992).
Applying the balancing test to the facts presented in this case, the court is constrained to find that the rope hanging from the tree in the defendant’s park did not constitute an unreasonable risk of harm such as is contemplated by La.C.C. art. 2317. In this ease, the risk was obvious and easily avoidable. The plaintiff did not act with reasonable care for her own safety. The benefit of a park preserved in its natural undisturbed woodland state to society far outweighs the attendant risks that unauthorized persons might hang ropes *518 from the branches of trees. It would be unreasonable to require the city to inspect all trees in the park for such dangers, not only because of the number of trees involved, but also because of the damage such inspections might cause to plant and animal life.
The circumstances that this injury took place in a restricted area off a closed trail coupled with the obviousness of the risk require a denial of plaintiffs claims at her cost.
On appeal, plaintiffs argue the following assignments of error:
1. The trial court failed to accept as conclusively established the City of Lafayette’s admission that it knew about the rope swings at Acadiana Park before Win-nette Bennett’s accident, under the provisions contained in La.C.P. art. 1468.
2. The trial court incorrectly decided that the City of Lafayette was not responsible to the plaintiffs under the theories of strict liability or negligence when the City knew about the rope swings in Acadiana Park before Winnette Bennett’s accident, believed them to be hazardous, and took no reasonable measures to prevent the injury which occurred.
3. It was error for the trial court to fail to reach the issue of damages and award the plaintiffs an amount sufficient to compensate them for their injuries.
As we find no merit to either assignment numbers one or two, we will not address assignment number three.

THE LAW

La.R.S. 9:2800 provides in part:
A. A public entity is responsible under Civil Code Article 2317 for damages caused by the condition of buildings within its care and custody.
B. Except as provided for in Subsection A of this Section, no person shall have a cause of action based solely upon liability imposed under Civil Code Article 2317 against a public entity for damages caused by the condition of things within its care and custody unless the public entity had actual or constructive notice of the particular vice or defect which caused the damage prior to the occurrence, and the public entity has had a reasonable opportunity to remedy the defect and has failed to do so.
C.Constructive notice shall mean the existence of facts which infer actual knowledge.
Plaintiff submitted the following request for admission to the City on September 4, 1991:

REQUEST FOR ADMISSIONS NO. 2:

Admit or deny that at all times pertinent hereto, the City of Lafayette, Louisiana, had knowledge, whether actual or constructive, of the existence of the subject rope swing located in Acadiana Park.
On December 17, 1991, counsel for the City responded thusly: “The statement made in Request No. 2 is admitted”. Affidavits, depositions and testimony at trial established that the City had knowledge of a rope in this particular tree in 1987. However, it was established that that rope was old, rotting, only about six feet long, and approximately thirty feet above ground level.
Appellants argue that the admission by the City was sufficient to prove the “notice” requirement of R.S. 9:2800 and, under the provisions of La.C.C.P. art. 1468, the trial judge erred in holding otherwise. We disagree. In Voisin v. Luke, 249 La. 796,191 So.2d 503 (1966), the Louisiana Supreme Court explained the purpose of La.C.C.P. art. 1468 (formerly C.C.P. art. 1496):
The request for admission of facts under Article 1496 provides what has been characterized as a “drastic remedy” and is an innovation in the civil procedure of Louisiana. It is patterned on statutes in other jurisdictions, particularly Federal Rule 36. Its purpose, application, and effect is, therefore, one of first impression in this court, although two other eases have been decided under this article in the appellate courts.
According to the pronouncements of the federal courts, and those of other jurisdictions having similar statutes, this procedure is designed to expedite the trial of cases and reduce to a minimum the expense involved, although, unlike *519 the pretrial conference and the interrogatory, it cannot be used as a pre-trial discovery device, for it is generally agreed its employment presupposes the requesting party knows the facts sought to be admitted and merely desires to ascertain and circumscribe the contested factual issues that are to be ultimately litigated. In other words, the purpose “is to require admission of matters which ought to be admitted, or which will not be disputed at the trial, so that the time, trouble and expense required to prove them may be avoided. ” Metropolitan Life Ins. Co. v. Carr, D.C., 169 F.Supp. 377. As otherwise stated, its purpose is to eliminate the necessity of proving uncontroverted facts. It may not, therefore, be applied to a controverted legal issue lying at the heart of a case. (The emphasis has been supplied.)
The procedure is not considered as pleading, was never intended to cover an entire case and every item of evidence, or to permit technical considerations to prevail to the detriment of substantial justice.
“These Rules * * * are * ⅜ * intended to promote and not to obstruct the administration of justice and thus enable the Court to do substantial justice rather than to decide cases upon technicalities which have no relationship whatever to the rights of the parties to the litigation.” Walsh v. Connecticut Mutual Life Ins. Co., D.C., 26 F.Supp. 566. Consequently, “The admissions cannot be taken as controlling. Decisions should not be based on mere matters of pleadings or technical admission.” Frankel v. International Scrap Iron and Metal Co., D.C., 157 F.Supp. 709. “The Federal Rules reject the approach that pleading is a game of skill in which one misstep by counsel may be decisive to the outcome and accept the principle that the purpose of pleading is to facilitate a proper decision on the merits.” Conley v. Gibson,' 355 U.S. 41, 78 S.Ct. 99, 2 L.Ed.2d 80.
Voisin, supra, at 506, 507.
It is clear from the testimony of several defense witnesses at trial that defense counsel’s answer to plaintiffs’ request for admission number' two was based on misunderstanding and confusion. Plaintiffs had no way of knowing there had been a rope in the tree in 1987 before discovery was completed; and, since all defense witnesses questioned on the matter vigorously denied any knowledge of the two ropes in place on the date of Ms. Bennett’s accident, it is obvious that the answer given was based on the presence of the 1987 rope. Under the circumstances, we find no error on the part of the trial judge in refusing to decide the issue of the City’s “notice”, a highly controversial issue, solely on an answer to a request for admission. Clearly, this error by counsel should not have been decisive of the issue of notice.
As to plaintiffs’ second assignment of error, even if, in arguendo, we assume constructive notice on the part of the City (which neither we nor the trial judge found to be the case) under the manifest error standard of judicial review, we cannot say the trial judge was clearly wrong in his findings.
In Desormeaux v. Audubon Insurance Company, 611 So.2d 818 (La.App. 3rd Cir. 1992), writs denied, 613 So.2d 966, 1002 (La. 1993), a panel of this court stated:
Liability under LSA-C.C. Art. 2315 imposes the same requirements as Article 2317, the difference in the two articles being, under, the theory of negligence, plaintiff must show that the owner knew or should have known of the risk, whereas under strict liability, the plaintiff is relieved of proving defendant’s scienter. El-dridge v. Bonanza Family Restaurants, 542 So.2d 1146 (La.App. 3rd Cir.1989). Under either theory of liability, the plaintiff has the burden of proving: (1) the property which caused the damage was in the custody of the defendant; (2) the property was defective because it had a condition that created an unreasonable risk of harm to persons on the premises; and, (3) the defect in the property was a cause-in-fact of the resulting injury. Id. In both negligence and strict liability cases, the reasonableness of the risk is determined by balancing the probability and magnitude of the risk against the utility of the *520 thing. Id. ... The body of jurisprudence interpreting strict liability and/or negligence under these circumstances is well established. An owner is not liable for injury which results from a condition which should have been observed by the plaintiff in the exercise of reasonable care or which was obvious. Eldridge, supra; David v. Reon, 520 So.2d 820 (La.App. 3rd Cir.1987), writ denied, 522 So.2d 564 (La. 1988)....
And, in Maples v. Merrimack Mutual Fire Insurance Company, 567 So.2d 1178 (La. App. 3rd Cir.1990), writ denied, 572 So.2d 64 (La.1991), we stated:
Moreover, not every minor imperfection or irregularity will give rise to strict liability. The defect must be of such a nature to constitute a dangerous condition, which would reasonably be expected to cause injury to a prudent person using ordinary care under the circumstances. Koppie v. Commercial Union Insurance Company, 478 So.2d 179 (La.App. 3rd Cir.1985), writ denied, 479 So.2d 922 (La.1985). In determining whether a given condition is unreasonably dangerous, the degree to which the danger may be observed by a potential victim who may then provide self-protection is a major factor.
In the case at bar, a 31 year old woman was confronted by two ropes of questionable origin and strength hanging from the limb of a tree over a 12 to 15 foot deep ravine in a rugged area of Acadiana Park closed to the general public. It was established that no City or Park employee knew of the ropes. Testimony also established that it would have been possible for her to test the strength of the ropes by standing on safe ground and tugging on them. Yet, she chose to climb upon the roots of the tree from which the ropes hung and attempt to swing out over a potentially dangerous drop-off to perform her safety test. The trial judge found that, under those circumstances, Ms. Bennett, an adult confronted by a clearly visible and obviously potentially dangerous condition who failed to exercise reasonable care, could not recover. In sum, the presence of the ropes hanging from a tree in an area of Acadiana Park closed to the public did not present an unreasonable risk of harm to an adult exercising reasonable care for her own safety.
The standard of review which we must apply in examining the actions of the trier of fact was scrupulously set out by our Supreme Court in Rosell v. ESCO, 549 So.2d 840 (La. 1989), and recently reiterated in Stobart v. State, Through Department of Transportation and Development, 617 So.2d 880 (La. 1993). We have examined this record in light of these announced principles and find no error in the trial court’s findings of fact and its conclusions of law. We affirm and tax all costs of this appeal to appellants.
AFFIRMED.