|2GONZALES, Judge.
Plaintiff, John B. Bernard, was shopping at an A & P grocery store in Franklin, Louisiana, on June 18, 1990 at about 8:30 in the morning. While perusing the deli display, Mr. Bernard passed by a row of card tables that were used to display cakes and pies. While looking forward at the deli display, Mr. Bernard stepped backward and backed into one of the card tables, injuring his neck, back and legs. Mr. Bernard, and his wife, Ruth B. Bernard, filed suit on September 14,1990, naming as defendants A & P and Warren Fontenot, the manager of the store at the time of the accident. After trial on the merits, a jury verdict in favor of plaintiffs was handed down on March 5, 1993. The jury found that both A & P and Mr. Bernard were guilty of negligence contributing to the accident, and assessed Mr. Bernard with 30 percent fault and A & P with 70 percent fault. The jury awarded $28,290.28 for past and future medical expenses, $487,000 for loss of earnings and earning capacity; $100,000 for past and future physical and mental injury, pain and suffering, disability and loss of enjoyment of life; for a total of $615,290.28. Mrs. Bernard was awarded $25,000 for loss of consortium.
On March 29, 1993, a judgment was signed in favor of plaintiffs and against A & P and Warren Fontenot, in solido, amounting to $430,703.20 (seventy percent of Mr. Bernard’s award) with legal interest from September 14, 1990 until paid, and for $17,500 (seventy percent of the consortium award), with legal interest from September 14, 1990 until paid. Defendants filed a “Motion for A New Trial And Rule For Remittitur Or In The Alternative For A New Trial” on April 7, 1993, which was denied on April 12, 1,993. Defendants filed a suspensive appeal on May 7, 1993.
Defendants made the following assignments of error:
1. The lower court erred in finding defendants, A & P and Warren Fontenot, guilty of negligence which was a cause of the accident in question.
2. The lower court erred in finding plaintiff, John B. Bernard, only to be thirty percent at fault for the accident.
3. The lower court erred in awarding plaintiff, John B. Bernard, four hundred eighty-|seven3 thousand and 00/100 dollars ($487,-000.00) for loss of earnings and earning capacity.
The Bernards answered the appeal, requesting an increase in the damage awards and legal interest on the fees and expenses taxed as costs of court from the date of judgment until paid.
ASSIGNMENT OF ERROR NO. 1
Defendants argue that the trial court erred in finding the defendants guilty of negligence which was a cause of Mr. Bernard’s accident.
The owner or person having custody of immovable property has a duty to keep such property in a reasonably safe condition. This person must discover any unreasonably dangerous condition on the premises and either correct the condition or warn potential victims of its existence. This duty is the same under the strict liability theory of La. C.C. art. 2317 as under the negligent liability theory of La.C.C. art. 2315. The difference in proof between these theories of liability is that under La.C.C. art 2315, it must be shown that the owner knew or should have known of the risk, whereas under La.C.C. art 2317, a claimant is relieved of proving the defendant’s scienter. Under either theory of liability, the plaintiff has the burden of proving that: (1) the property which caused the damage was in the custody of the defendant; (2) the property was defective because it had a condition that created an unreasonable risk of harm to persons on the premises; and (3) the defect in the property was a cause-in-fact of the resulting injury. Farr v. Montgomery Ward and Company, Inc., 430 So.2d 1141, 1143 (La.App. 1st Cir.), writ denied 435 So.2d 429 (La.1983) (citations omitted). In both negligence and strict liability cases, the reasonableness of the risk is determined by balancing the probability and magnitude of the risk against the utility of the thing. Hunt v. City Stores, Inc., 387 So.2d 585, 588 (La.1980); Carter v. Board of Supervisors Of Louisiana State University, 459 So.2d 1263, 1266 (La.App. 1st Cir.1984), writ denied 462 *1159 So.2d 1248 (La.1985); see also Entrevia v. Hood, 427 So.2d 1146, 1148 (La|41983).
The plaintiff testified that the accident happened as follows:
Oh. Okay. I was just looking right quick and the lady behind the counter, Mrs. Thi-bodeaux, came up and asked me if she could help me. I said, “I’m just looking right now. I’m trying to make up my mind what I am going to do.” And I just kind of stepped back, I hit a low table, and I was moving back, you know, my progress kept bringing me back. I went to turn around and my feet got hung up in the legs of two tables. And they couldn’t move and I fell on top of the table and went over the table and landed on my head and scraped my side going over the table. I landed on my head. Hit the floor.
According to his testimony, Mr. Bernard backed into the table without looking behind him. Just minutes earlier, he had walked past these same tables. Plaintiffs safety expert, Mr. Dennis R. Howard, testified as follows:
Q. Did the empty display tables pose a hazard to John Bernard and other customers in the deli-bakery department of the Franklin A & P?
A. Yes., as I understand the way they were configured in the proximity to the meat and deli displays, and also the way the legs of this table protrude slightly out from the perimeter of the table.
Q. Would you please explain for us the hazard or hazards that wei‘e posed by these tables as constructed and located?
A. The position of the table being within a 4-foot range of the deli display meat cases locates it in a position that the people are likely to make contact with that table.
Hopefully it would be the upper surface of the table, but that does not seem to be the case in Mr. Bernard’s accident or in other incidents that I’ve learned about through studying the facts of the case.
As one backs up to view — to gain a peripheral view of the offerings, it’s foreseeable that they will back into the table and strike them at approximately — well, into the thigh area.
This table measures 27 and ¾ of an inch above the floor itself. It’s lightweight in design and construction.
And as one backs up it’s predictable to me that one would attempt to turn and discern or understand what it is they struck and in so doing a foot can easily get tangled into the legs that may extend out if you’re near the edge where the legs are when you strike it.
Mr. Howard did not find that A & P had violated any mandatory safety standards in regard to the table at issue. He conducted no tests reconstructing the accident, and he did not base his opinion about the probability of people backing up to look at the display cases upon any scientific studies. He was asked on direct examination:
|5Q. At the time of Mr. Bernard’s injury the table or tables in front of the refrigerated display cases were empty with no cloth skirting or anything of that nature on them.
How could displays in front of display cases like in the deli-bakery department at the Franklin A & P have been improved?
A. Well, there are a number of ways to improve that kind of merchandising method. One of the first things that you want to do is you want to increase the stability and — of the display island itself.
You want to recess the supporting members that are going to be in contact with the ground so that one is not likely to trip or stumble over that item.
You want, if possible, and it is possible to have the display island of such a height that it’s going to be within the normal view of one shopping.
And if someone should make contact with it inadvertently backing into it as Mr. Bernard' did, it should have some resistance to allow them to regain their temporary loss of balance.
Ideally, you don’t place an object, even a display island, as close to the display case as these were.
This testimony by Mr. Howard provides only his recommendations for improving the display tables, not the existence of any required industry standards which were breached by *1160 A & P. The only standard which was proven at trial to have been breached was A & P’s standard for display islands, which required a minimum height of 36 inches. However, in examining the testimony of Mr. Bernard as to how the accident happened, we find that the height of the table did not cause the accident. Because Mr. Bernard backed up (without looking) into the table, we believe that the height of the table was not a cause of the accident. In other words, even had the table been 36 inches high, Mr. Bernard still would have backed into it. Rather, we believe that the cause of the accident was the fact that when Mr. Bernard turned around, his feet became entangled in the legs of the table, causing him to lose his balance and fall. Mr. Bernard failed to prove, by expert testimony or otherwise, that there was any standard applicable to table legs being recessed or going straight down to the floor.
However, the jury listened to the testimony of plaintiffs expert and determined that the defendants, A & P and Warren Fontenot, were guilty of negligence which contributed to the accident. In Stobart v. State, Through Department of Transportation and Development, 601 So.2d 33 (La.App. 1st Cir.1992), this court in an |6unpublished opinion reversed a trial court judgment against the State, finding that the evidence, including a videotape and photographs of the roadway, as well as an accident report prepared by the investigating police officer, showed that the plaintiff failed to prove by a preponderance of the evidence that a defect in the roadway caused the accident. Stobart’s expert witnesses relied almost entirely on the videotapes and photos, which this appellate court concluded showed no defects.
The Louisiana Supreme Court granted writs in the case, and in Stobart v. State, Through Department of Transportation and Development, 617 So.2d 880, 884 (La.1993), this court was reversed, and the Supreme Court stated:
Despite this apparent conflict in the evidence, an appellate court must defer to the factfinder’s decision absent the decision’s being manifestly erroneous or clearly wrong. In this case the factfinder was faced with two permissible views of the evidence. Accordingly, the trial court’s decision was not manifestly erroneous or clearly wrong. The Court of Appeal erred when it reversed the trial court’s ruling.
As to the videotapes and photos the Supreme Court further stated:
While the defect may not be apparent in the documentary evidence (i.e. Mr. Sto-bart’s photographs and Mr. Stelly’s videotape), this situation does not appear compelling enough to conclude that no reasonable trier of fact would have credited [the testimony of plaintiff and her witnesses].
Thus, the Supreme Court found that the objective evidence was insufficient to overcome a contrary claim by interested parties. Although this appellate court believed the expert’s opinions were without foundation, the Supreme Court found that these opinions were some evidence believed by the trial court and thus beyond our scope of review. Stobart stands for the proposition that any expert opinion in the record, however unfounded by factual evidence, is a permissible view of the evidence if believed by the trial court. Although we do not find that the table in this case presented an unreasonable risk of harm to Mr. Bernard, in accord with the views expressed by the Louisiana Supreme Court in Stobart, we believe we are not permitted to reverse the finding of negligence by the trier of fact where there is any evidence, however slim, which can be construed to support the factfinder’s ruling.
|7THE DAMAGE AWARDS
Both plaintiffs and defendants urge that the damage awards should be modified. In Youn v. Maritime Overseas Corp., 623 So.2d 1257, 1261 (La.1993), the Louisiana Supreme Court stated:
[T]he discretion vested in the trier of fact is “great,” and even vast, so that an appellate court should rarely disturb an award of general damages. Reasonable persons frequently disagree about the measure of general damages in a particular case. It is only when the award is, in either direction, beyond that which a reasonable trier of fact could assess for the effects of the particular injury to the particular plaintiff under the particular cir *1161 cumstances that the appellate court should increase or reduce the award.
Because the discretion vested in the trier of fact is great, and even vast, we find that this is not one of the rare instances wherein we may disturb a damage award.
THE ASSESSMENT OF FAULT
A & P and Warren Fontenot urge that the trial court erred in only assigning Mr. Bernard thirty percent fault for the accident. This is a factual finding made by the trier of fact which can be disturbed only if manifestly erroneous or clearly wrong. Stobart, 617 So.2d at 882. After thorough review of the record, we cannot say that this assessment of fault is manifestly erroneous or clearly wrong; therefore we find no merit to this argument.
LEGAL INTEREST ON COURT COSTS
We find merit in the Bernards’ argument that the trial court erred in failing to award legal interest from date of judgment on court costs, as provided for in Catchings v. City of Baton Rouge, 621 So.2d 767 (La. 1993). Therefore, the trial court judgment is amended to provide for interest from date of judgment on court costs.
DECREE
Therefore, for the above reasons, the trial court judgment is amended to provide for interest from date of judgment on all expenses taxed as court costs, and as amended, the trial court judgment is affirmed. Costs are assessed against A & P and Warren Fontenot equally.
AMENDED, AND AS AMENDED, AFFIRMED.