676 So.2d 238 (1996)
Ann SUMMERVILLE and Ned Summerville
v.
LOUISIANA NURSERY OUTLET, INC., et al.
No. 95 CA 2224.
Court of Appeal of Louisiana, First Circuit.
June 28, 1996.
*239 Leonard Cardenas, III, Baton Rouge, for Plaintiffs-AppellantsAnn Summerville and Ned Summerville.
Joseph A. Schittone, Jr., Baton Rouge, for Defendants-AppelleesImahara's Nursery and Landscape Co., Inc., ImaharaKaga Partnership, Imahara Landscape Co., Inc., Transcontinental Ins. Co.
Leon Crist, Metairie, for Defendants-AppelleesLouisiana Nursery Outlet, Inc. Boston Old Colony Ins. Co.
Before LOTTINGER, C.J., and GONZALES and FITZSIMMONS, JJ.
FITZSIMMONS, Judge.
Plaintiffs-appellants, Ann and Ned Summerville, appealed the judgment of the trial court dismissing their suit for personal injuries to Mrs. Summerville. We affirm.
On September 29, 1991, Mrs. Summerville was injured when she twisted her ankle and fell to the ground on her right knee. The accident occurred when she stepped from a concrete parking lot onto a walkway. The walkway was composed of slabs of exposed aggregate. It led to defendants' business property. A wide yellow strip marked the edge of the parking lot. The strip was approximately four to six inches in width and signaled a border between the lot and the walkway. As the result of deterioration, a small depression formed at the edge of the parking lot border. Flowing away from the border, the depression had gradually sloped sides. In Mr. Summerville's words, it was "dished out."
Mr. and Mrs. Summerville sued for damages. The named defendants were Louisiana Nursery Outlet, Inc., Imahara's Nursery and Landscape Company, Inc., Imahara-Kaga Partnership, Imahara's Landscape Company, Inc., and their insurers.
After a two day trial, the trial court found in favor of defendants and dismissed the suit. The trial court gave the following reasons for judgment:
The plaintiffs allege in their petition that Mrs. Summerville's fall was caused by "an uneven walking surface[."] The plaintiffs' [sic] elicited testimony concerning the fall sued upon herein and describing the defect in question.... Photographs submitted by the plaintiffs reveal a concrete walkway in which conglomerate slabs are bordered by a concrete curb [that is part of the parking lot surface.] Natural geologic processes (i.e., subsidence, compaction, and/or dehydration of soil) have caused one of the concrete slabs to settle creating a difference in elevation between the surface of the slab and that of the [parking lot] border ... slightly in excess of one-inch. The pictures also reveal that the depression is relatively free of debris and that the border [of the parking lot] is painted yellow.
The court does not believe that the defect in question presented an unreasonable risk of harm. The settling of the conglomerate slab in the soft Louisiana soil created a slightly imperfect surface. While this surface was technically defective, it was not unreasonably dangerous. The difference in texture and color between the slab and the [yellow parking lot border] clearly draws the attention of pedestrians to potential changes in the walking surface. The differing colors and textures of the adjoining materials also accentuated any difference in surface levels. The court believe[s] that the depression at issue is such that the ordinary prudent individual would *240 observe [it] while casually proceeding toward this retail establishment.
The Summervilles filed a motion for a new trial. The trial court denied the motion and gave written reasons.[1]
Plaintiffs based the suit on negligence and strict liability theories. See La.C.C. arts. 2315 & 2317. Under either theory, the plaintiffs must prove: (1) the thing that caused the damage was in the custody of the defendant; (2) the thing was defective and the defective condition created an unreasonable risk of harm; and (3) the defective condition caused the plaintiffs' injuries. The difference between negligence and strict liability is knowledge. With strict liability, the plaintiffs need not prove defendant's knowledge of the defect. Batiste v. Bevan, 634 So.2d 893, 896 (La.App. 1st Cir.1993).
It is well settled that not every defect presents an unreasonable risk of harm. Bennett v. City of Lafayette, 93-1113 (La.App. 3d Cir. 4/6/94); 635 So.2d 515, 520, writ denied, 94-1201 (La. 7/1/94); 639 So.2d 1167; Maples v. Merrimack Mutual Fire Insurance Company, 567 So.2d 1178, 1180 (La.App. 3d Cir. 1990), writ denied, 572 So.2d 64 (La.1991). Webster's Third New International Dictionary defines the word "unreasonable" as something that is "not governed or acting according to reason: evincing indifference to reality or appropriate conduct ... absurd, inappropriate, incongruous ... exceeding the bounds of reason or moderation ... inordinate, unconscionable...."
In determining what is an unreasonable risk of harm, courts consider moral, social, and economic values, and the interests of justice.[2] The courts use a duty-risk analysis or try to balance the likelihood and magnitude of the harm against the utility of the thing. Economic considerations include the cost of risk avoidance to the defendant and the utility of plaintiff's conduct. Oster v. Department of Transportation and Development, 582 So.2d 1285, 1288-89 (La.1991); Batiste, 634 So.2d at 896. This balancing analysis allows the court to respond to the changes in societal needs and technology, but still consider what is in the best interests of society, as a whole.
Certainly the property and business owner has a duty to maintain their property and cannot allow a walkway to deteriorate and pose an "unreasonable" risk of harm. The business or landowner must discover and correct the unreasonably dangerous defect, or warn of its existence. Bernard v. The Great Atlantic and Pacific Tea Company, 93-1711 p. 3 (La.App. 1st Cir. 8/25/94); 645 So.2d 1157, 1158. We agree that a pedestrian should not have to constantly observe the terrain or "exercise the care that would be necessary in traversing a jungle." White v. City of Alexandria, 216 La. 308, 43 So.2d 618, 620 (1949). However, the job of avoiding accidents does not rest solely on the business or property owner in these cases. Pedestrians must take some personal responsibility for avoiding injury on uneven walking surfaces. This is particularly pertinent when the defect is apparent and should have been seen by a reasonably attentive walker, or the property owner has made a reasonable effort to alert the walker. The walker "must exercise ordinary care ..., having in mind the well recognized fact that throughout every city of any size in this state there exist irregularities in the walkways brought about *241 by natural causes...." White v. City of Alexandria, 216 La. 308, 43 So.2d at 620.
After a thorough review of the record, we cannot say that the trial court committed manifest error in its findings of fact. Based on those facts, the trial court determined that the uneven walkway did not pose an unreasonable risk of harm. We agree.
The facts and circumstances of each particular case are determinative. In this case, Mrs. Summerville admitted that she had shopped at the nursery several times before, but had not parked in that particular area. She came voluntarily to the nursery and chose the path to walk. Ms. Summerville admitted that she was not paying attention to the parking lot, but trying to maneuver between cars; she looked ahead at the walkway, but did not notice that the surface of the walkway was different from the parking lot; she did not see the yellow line painted along the edge of the lot. As she stepped from the lot to the walkway, and necessarily over the yellow stripped border, Mrs. Summerville turned to the right. She admittedly looked toward the store while turning right and stepped onto a different surface at the edge of the lot. In the process of turning to the right at the edge of the lot, Mrs. Summerville twisted her ankle and fell.
Plaintiffs argue that if the manager of Louisiana Nursery Outlet, Inc. did not see the depression on his daily rounds, an ordinary pedestrian would not have been alerted to the depression. Also, plaintiffs point to the manager's admission that if he had seen the depression, he would have reported it to the owner. We do not find these arguments determinative here. Nor did the trial court. The manager's failure to notice the depression during his overview of the entire property does not make the defect unreasonably dangerous. Nor does the fact that the manager would have reported the erosion, had he seen it, categorize the defect. Under plaintiffs' reasoning, every possible needed repair would constitute an unreasonable risk of harm. That is simply not the state of the law.
Plaintiffs argue that the cost to repair one depression would be small. The plaintiffs do not take into account the cost to the business or property owner of repairing every small depression in large aggregate surfaced walkways in a state with heavy rainfall and often less than stable soil. To follow plaintiffs' reasoning, the unreasonably dangerous defect is the use of anything less than heavy reinforced concrete for walkways in Louisiana. Additionally, if every uneven surface or irregularity of slightly more than one and 3/16 ths inches is deemed to be unreasonably dangerous, there may well be no safe area of traversal in the southern part of the state.[3] On the other hand, the utility of walkways and parking lots for businesses and shopping is high for today's mobile society. As to probability of the harm, the trial court found that the use of the different surfaces and the presence of the yellow border would draw the attention of a pedestrian. Thus, the ordinary prudent pedestrian would have observed the depression, significantly reducing the chance of accidents.
For these reasons, we affirm the judgment of the trial court. We assess the costs of the appeal to plaintiffs, Ann and Ned Summerville.
AFFIRMED.
NOTES
[1] In the motion for a new trial, plaintiffs pointed out that the court incorrectly called the border between the walkway and the parking lot a curb. The border on the edge of the walkway was formed by the surface of the parking lot. No additional curbing appeared in the pictures. A strip of the parking lot, immediately adjacent to the walkway, was painted yellow. The trial court, however, in its reasons for denial of the plaintiffs' motion for a new trial, stated that the inaccuracies in the court's description pointed out by plaintiffs were not the underlying factual basis for his decision. The important facts remained the same.
[2] Plaintiffs cite access standards for disabled individuals adopted in La.R.S. 40:1731, et seq., as another basis for determination of an unreasonable risk of harm. Plaintiffs argue that the change in elevation in the depression was in violation of these standards. Therefore, the defect was unreasonably dangerous. However, no previously constructed ramp was involved in the accident. Mrs. Summerville was not handicapped, in a wheelchair, or using a walker. These standards are not applicable to this case.
[3] Had this depression been located in a hospital or health care facility lot or entrance, the circumstances would be different, and it may well constitute an unreasonable risk of harm to patients.